Thank you. May it please the court and good morning. My name is Paul Haffman and I'm here with my co-counsel Julia Follansbee. I'm representing Glacier Electric Cooperative, the appellant in this case. And I would like to reserve three minutes for rebuttal if I may. All right. The issue presented in this appeal is one which this court has heard on numerous occasions in different contexts. That is, whether an Indian tribe has the jurisdiction to exercise civil authority over a non-member on an Indian reservation. This issue is not unique, but the context in which it arises in this instance is very unique and indeed involves extraordinary circumstances. This is the only case of which we're aware where an Indian tribe has continued to assert jurisdiction over a non-Indian which has already been conclusively held by this very court to have been deprived of due process in the tribal court system. And this is the only case of which we are aware in which a tribal court has been asked by the Indian litigant in the case to use its judicial power to execute on a judgment tainted by due process. Counsel, this case is complicated by the fact that we addressed the parties' issues before, and the jurisdictional issue was not brought in the prior appeal. It was not joined, I should say, in the prior appeal. What does that do to your argument now? I don't believe it affects it at all, and the reason is quite simple. The first appeal in this case back in 2001 was a case that was brought in comity. That is, the successful tribal court plaintiffs were seeking to enforce their tribal court judgment in the federal court system. And this court was being asked whether this judgment met the basic fundamentals of comity, two of which, the two legs on which comity stands, are that there was in fact due process and that there was in fact tribal court jurisdiction. And the district court, as I recall, held that there was jurisdiction, correct? That is true. And that was not appealed, correct? It was not appealed. Actually, we reserved the issue of tribal court jurisdiction to the extent that it related to the issue of due process. It was referenced in footnote six of our opening brief in the... I don't know what you mean by to the extent it was related to due process. You either have subject matter jurisdiction or you do not. The district court held that there was subject matter jurisdiction in the tribal court, and you didn't appeal that, correct? That's true. We did. My point, one of the premises of this appeal is that if you have a lack of due process in the tribal court system, then that means that the tribal court judgment is void as a matter of law, and there is no jurisdiction to enforce. Do you have a case that says that? We haven't been able to find any cases which specifically apply that rule in the context of a tribal court judgment. Is a tribal court required under tribal law for a judgment against someone executed only on the tribal reservation? Is it required to follow due process as the 14th Amendment regards due process? Well, this particular tribal court in the first Glacier Electric case, this court recognized that this is basically an Anglo-Saxon court system, which is paralleled after the U.S. courts and the other Anglo-Saxon courts. So this court applied... I understand that, but that was not quite my question. Is a tribal court, assuming it has jurisdiction over the parties and over the subject matter, which I understand you're not now conceding, but assuming that it has jurisdiction over the subject matter and over the parties, is the tribal court bound by due process under the 14th Amendment as a federal or state court would construe due process, or may the tribal court follow its own notions of due process? Well, the tribal court in this case does have its own notions of due process, which are paralleled after the notions in the federal court system, but... I'm asking you, may it follow different notions of due process? As long as they comport with the... as long as they're not so inconsistent with the federal constitutional standards for due process that they would result in a fundamental unfairness. Where's that come from? Do you have a case that says that? That is the Washington v. Confederated Tribes of the Colville Indian Reservation. That is 447 U.S. 134, where the court talked about the fact that tribal courts are divested of the authority to exercise tribal sovereignty where it would be inconsistent with the overriding interests of the national government, as when the tribes seek to engage in foreign relations or prosecute non-Indians in the United States. That is in tribal courts which do not afford or not accord the full protections of the Bill of Rights. Did you cite that case in your brief? Yes, we did, Your Honor. Yeah, but that sounds to me as though that is a separate matter of jurisdictional proposition, because we know very well that the tribal courts do not have jurisdiction to prosecute non-Indians. True. Whether or not they follow due process or not. True. But it falls right into the civil context as well, is that if the tribal courts are not going to afford a non-Indian litigant fundamental due process, then they're not supposed to have jurisdiction over that non-Indian litigant. What we know is that if they don't afford due process, then they won't get comity outside the reservation for their judgments. That's what the Burt opinion tells us. True. So we have that limitation. That's clear from the history of this case. But what we don't know, and I don't believe you have cited authority yet to tell us the answer, is what does that mean on the reservation? And you've had your chance. You've argued to the tribal court that it ought to void its own judgment for lack of due process, right? That's true. And they rejected that argument. In fact, the tribal court said this court was flatly wrong when it said that there was a lack of due process. And our position is that... So you now have the ability to prevent comity off the reservation, and the tribe asserts its sovereignty on the reservation. But it's important to keep in mind that the sovereignty of the Indian tribe on the reservation is limited. And what we're talking about here is the ability for the plaintiffs in the underlying case and the tribe to exercise jurisdiction over the assets of the electric co-op. We're talking about assets which are owned on land owned in fee simple by Glacier Electric Cooperative, and we're talking about assets which are rights-of-way across the reservation, which were granted by Congress or by the individual members of the electric co-op. So those are all lands which the court has found in numerous occasions are not considered the same as being part of the reservation. Well, that's a separate argument you'd have a chance to make if someone tried to enforce a tribal judgment on lands that you believe are not on the reservation. But your argument here today is simply that there's no subject matter jurisdiction. Why isn't that an argument entirely foreclosed by Judge Hatfield's earlier ruling? Well, several reasons. Number one is that Judge Hatfield addressed that issue only in the context of whether there was tribal jurisdiction over the underlying action itself. He did not address that issue in the context of a civil enforcement proceeding. And in the civil enforcement proceeding, the facts have changed significantly. In the enforcement proceeding, the tribal court plaintiffs are trying to enforce a judgment which has already been held to be violative of due process. And I thought the earlier action was an enforcement proceeding. The tribes went to federal court to seek to enforce the judgment they'd gotten in tribal court. They sought to enforce it in federal court, that's true. But they were trying to enforce it against off-reservation assets using the ability or the powers of the federal court to do so. Now they're trying to enforce that judgment on the reservation against on-reservation assets, which are beyond the jurisdiction of the tribal court to authorize. And specifically we're talking about assets which, if executed upon, which would infringe on the interests of the federal government in protecting, for example, the national borders. The Von Raab case, which is cited in our motion to expedite this hearing today, talked about the fact that the United States government has a compelling interest in protecting its borders with Canada. Two of the border stations between the United States and Canada are serviced by Glacier Electric Cooperative. If the plaintiffs are allowed to execute on Glacier Electric's assets, it will result in Glacier Electric being unable to provide service to very important national interests such as our border stations. And that would result in the type of open border situation which the federal government has been trying very hard in recent years to shut down. Assuming that that's all true, how is that relevant to the question in front of us? Well, in the Colville Indian Reservation case where I cited previously, they talked about the fact that tribal sovereignty is divested to the extent that it interferes with the overriding concerns of the national government. And this is precisely such an overriding national concern. Counsel, do you have on the tip of your tongue where in either of your briefs you cited that case? I don't, but I'm confident my co-counsel can find that. You come back if you would. I read the briefs, the blue brief and the gray brief, and I did not see a citation to that case. Okay. I was talking about the fact that this is an unusual case. And it is one that is, frankly, it's been an unusual case to be a part of for the last 17 years. But one of the things, well, I've been sanctioned several times. My license has been pulled from practice in tribal court. It's been an unusual proceeding, to say the least. And we'd like to see some resolution, naturally. You may get it. In fact, there's one threatened right now. The one last issue I'd like to point out is that this is an anti-suit injunction along the lines of the E. and J. Gallo case of this court in which the Blackfeet tribe has been given notice but has chosen not to appear. The Blackfeet tribe, in the first time this case was in federal court, the Blackfeet tribe intervened when it recognized or perceived that its interests were being affected significantly by the case. And that was when we tried to subpoena records from a private practice attorney who practiced regularly in tribal court who we believed had written the tribal appellate court opinion. And when that happened, the tribe intervened, conceded that that was, in fact, a law clerk of theirs, and got the relief that it was requesting. In this case, we have specifically notified the tribal court that this action was pending and it has chosen not to interfere in these proceedings. So the only thing that we're asking for is an injunction not against the tribe but against the tribal court plaintiffs continuing to pursue their enforcement efforts on the reservation against assets which are beyond the jurisdiction of the tribal court to affect. Okay. Do you want to reserve? I'll reserve. Yeah, not quite three minutes. Fine. All right. Thank you. Sure. Good morning. May it please the court. Counsel, I'm Gary Zadig, one of the counsels for the appellees here. Scott Sherburn, his estate, Ron Bird, and Herb Gillum, who comprise Glacier Construction. Were you the original trial attorney way back when? No, sir. Okay. You didn't make that argument? I didn't make that argument. And let's talk about that argument for a moment. The closing argument of counsel for Glacier Construction, Sherburn, Bird, and Gillum made a reference to Custer in his closing argument. There was no contemporaneous objection at trial. It was not raised at the tribal appellate court level. It was raised for the first time in the Bird litigation, not at the district court level, but in a reply brief to this court. But, counsel, you wouldn't disagree that that closing statement was a little inflammatory. Oh, I would agree with you. And the decision of Bird we don't argue with. I only mention that to put it in context that this many years later it has become a bigger straw man here. The Glacier Co-op had the opportunity to raise it then if it was that glaring of an error. It didn't. It has been used by the Ninth Circuit in the Bird decision to refuse to grant Comity, reverse judge Hatfield on Comity. Glacier Co-op made a conscious decision. What its strategy was, I don't know.  But they abandoned the issue of jurisdiction. Perhaps in light of Judge Hatfield's thorough analysis under Montana, because after all, Glacier Co-op, I believe 80% of their customers are tribal members. They have poles and wires across the reservation. They have facilities there. They have a bill paying office there. They entered into a contract with tribal members to do work on the reservation. This is clearly within the jurisdiction then of the tribal court. That issue, though, Glacier Co-op made a decision to abandon on appeal and argued due process. Now, what is due process in fundamental fairness, and is the tribal court bound to the same notions exact as courts of the United States or courts of some other country? Because after all, they are a sovereign nation. The tribal court system, the Blackfeet Reservation, affords notice, opportunity for hearing, the right to call witnesses, cross-examine witnesses. It has an appellate court. But does it have to match decision for decision the decisions of courts of the United States or other courts on what is a violation of due process or not have the same notions? No, it does not. And that's the basis of the decisions from the United States Supreme Court and the federal courts that a court of the United States cannot impose its will or its order on a court of France or Italy or some other country. Those stand alone. Now, what can the United States courts do? Refuse to grant comity. And that was the decision. The Ninth Circuit, however, did not. Can the United States impose a bill of rights protections in tribal court criminal cases? In criminal cases. So you'd make an exception between civil protections, due process, and criminal protections? Yes. In answer to your question, I looked through the opening and reply brief for the citation. I overlooked it. If they find it, I apologize. Independent of separate notions of due process, didn't the tribal court, in fact, rely on what you discussed a moment ago, the lack of contemporaneous objection, as one of the reasons not to find that the original proceeding violated tribal notions of due process? That's correct. In fact, and I want to clear this up, and I'll answer your question in the midst of that. While the Byrd case was going on, enforcement proceedings were going on on the reservation.  But they would not post a supersedious bond. That order was lifted. Years later, the co-op then argued to the tribal court, this judgment hasn't been enforced, it's no longer enforceable. In the excerpt submitted by Glacier Co-op, page 200, is a pleading filed in tribal court. It's an objection to the petition for enforcement proceedings, proceedings in aid of execution, in which it was argued that the tribal court judgment was still enforceable, that the federal court didn't stop it, and that when the tribal court lifted the stay because no bond was submitted, and this is page 200 and 201 of the excerpt of record, that the judgment was enforceable from that point on. And the failure of my clients to enforce it by that point in time meant that it was too late. And so they argued to the tribal court that the judgment was always enforceable, and now they seek in the federal courts to argue the judgment is not enforceable. Those are very inconsistent positions. But to answer your question directly, Your Honor, they have appealed two times, and actually now three times, a motion for proceedings in aid of execution. And in those petitions or appeals to the tribal court, the co-op has raised this due process argument of the closing comments. It was considered and it was rejected. And so they have had the opportunity to present the issue. They presented it two times. Each time we asked for a debtor exam, they refused to bring someone for a debtor exam. We asked the court to issue a writ. They appealed that. That's technically not an appealable order. It's been decided twice to that effect, and tribal court is pending their third time. You call Judge Hatfield's decision law of the case. Your opponent calls it a number of things, including issue preclusion. Why isn't this just claim preclusion, a matter that was litigated by the same parties and decided in an earlier proceeding and binding today? And perhaps it's my ignorance in appreciating all the distinctions between law of the case and res judicata and issue preclusion, but they raised the issue of jurisdiction when the suit was filed, the bird suit was filed in federal court. Judge Hatfield ruled against them on jurisdiction. They chose not to appeal it. They sent a letter to the Ninth Circuit, which is in our excerpt of record at page 37. In their brief, they said they were abandoning it except to the extent it's part of the due process analysis. I don't know what that means, but they abandoned the jurisdictional issue, so only Comody was before this court. But whether it's issue preclusion, law of the case, or res judicata, did they have the opportunity to raise the issue? They did. In fact, they raised it, and then they made a conscious decision to abandon it. So it could be forfeiture as well. It could be. I'm sure there's several other related first cousin-type doctrines that would apply. Clearly, Judge Hatton decided that they had the opportunity. It was determined against them. And the bottom line is, if there's a 30-day time period for filing an appeal and you do that and you raise the issue and then you abandon it to hold that they can raise it now 10 or 15 years later, we might as well erase the 30-day rule and issue preclusion and res judicata. Same parties, same issues, same facts challenging jurisdiction to raise today. The facts haven't changed. At least your court did business on the reservation. Your opponent, perhaps at oral argument today, puts a slightly different wrinkle on that chain of events. And if I understand it, it's to say that the subject matter jurisdiction challenge earlier was a challenge to the tribe's ability to exercise jurisdiction off the reservation and that today it's a challenge to the tribe's ability to exercise jurisdiction on the reservation. I don't appreciate that distinction, Your Honor. I'm sure you don't, but what do you make of it? I disagree with the argument. Subject matter jurisdiction is, did the tribal court have jurisdiction over those parties in that issue? And Judge Hatfield decided they did. On or off the reservation? Well, tribal court had jurisdiction over Glacier Co-op on the reservation. And so the other issue off the reservation is, in your view, more a matter of enforcement of a judgment. Correct. And that was the Comity issue, isn't it? In my mind it is. Now, we don't seek to enforce it off the reservation, and counsel raises this bugaboo about the Border Patrol, and there's no record established in that respect, but I do know that there are alternative electric suppliers. Has there been any attempt to cut off power to the United States government up there? Well, what ordinarily happens, as we all know, if someone with a judgment threatens to execute on specific pieces of personal property, the ordinary response of a defendant once the judgment is clearly capable of execution, they just pay the money. I mean, it does not strike me as a realistic likelihood that they're going to quit servicing all their customers. I mean, that would cut off the most despite their face. They can make that argument. I'm not sure it's relevant even if that is what they end up doing. The question is whether or not tribal court had jurisdiction. I agree with you. Perhaps it was a scare tactic. Unless there are further questions, I've made my point. I appreciate your time. Thank you. Respond. You've saved some time. Thank you. In answer to Judge Rawlinson's question, you're right. We didn't cite that specific case in any of our briefs, and the reason we didn't is the Colville Indian Reservation case is implicit within all the cases that talk about retained tribal sovereignty versus non-retained tribal sovereignty. It simply expresses it in a way that seems particularly applicable to this case. Right, but I ask you specifically that because we read the briefs very carefully, and our law clerks do as well. So when you cite a case that none of us recall, it kind of throws the argument askew because we have not read the case, and you were relying on that so heavily. That's why I ask you that. So you want to keep in mind to make sure that if you're talking about a case you've cited in your briefs and if you haven't cited it in your briefs, don't tell us that you have because we will know whether or not you cited it in your briefs. Thank you, Judge. Custer's last stand. You know, I think it's helpful to be aware that this issue of whether we did or didn't raise the objection to the Custer's last stand argument in the first trial in tribal court 17 years ago. The last time this case was up on appeal, we submitted supplemental briefing in which we explained all the different times when the issue of statements like Custer's last stand and other racially inflammatory arguments were made. And they were made numerous times throughout the case, and they were objected throughout. And those briefs, those supplemental briefs that were filed, this Court can take judicial notice of. So the argument that- But you've already won. You argued that there was no due process. You won that fight, and you got the Ninth Circuit to agree that federal government shouldn't show comedy to that judgment. But you didn't get from the Ninth Circuit earlier an actual voiding of the tribal court judgment. And it seems clear from the opinion that the Ninth Circuit went out of its way not to do that. I completely agree. It left for another day the issue of what effect a declaration that there was a lack of due process in the tribal court proceedings have. And this is- And didn't it leave it for another day for you to argue in tribal court? And we did in tribal court. And we lost up the line in tribal court because the tribal court differs with this court's view of whether something is or is not- whether they are or are not required to grant due process. Well, and also, as I understand what the tribal court did, it was heavily influenced by its view as to whether or not there was proper objection made in the tribal court. Putting it into a different context now, I'm not talking tribal courts. I'm talking federal courts versus state courts. There can be an egregious violation of due process in a state criminal proceeding. But if there's a failure timely to object in accordance with state law, the federal court cannot touch it. So for us now to say the tribal court has said that you failed to raise it timely and that's part of our decision as to why we're going to leave it intact, for us to say, well, the tribal court mistook its own procedural rules and the effect of the failure to abide by the procedural rules, and therefore for us not only to say, well, we're not going to enforce it outside the reservation, but for us to go to the further step and say the tribal court had no jurisdiction, period. That's a pretty major step. It is, and it's the right step to take in this case because there's been a lot of water under the bridge since the time that the decision was made back in 1998 by Judge Hatfield. There's been all the series of due process violations that have occurred since that time, but setting those aside, at the time that Judge Hatfield was considering the case, it was only whether the judgment was entitled to be recognized and enforced as a matter of comity in federal court. And there was no issue relating to whether the plaintiffs in the underlying tribal court case could take the assets of the electric co-op that were located on the reservation on land that wasn't owned. So I think it's apples and oranges. You're over. Would you care to sum up? Thank you. In a nutshell, Your Honor, it's Glacier Electric's position that the district court erred when it refused to address the issue based on the argument of res judicata, that res judicata doesn't apply, nor does issue preclusion or claim preclusion, that there's no reason to remand for an extensive discussion of the issue of jurisdiction because under the principles that a judgment that is lacking in due process is a void judgment, by operation of law that judgment is unenforceable for a lack of jurisdiction. Thank you. Thank you very much. Thank both sides for their argument. The case of Glacier Electric Cooperative v. Sherbourne is now submitted for decision.
judges: Mosman, Fletcher W. , Rawlinson